JOHN A. GRISWOLD and others, Respondents, v. FRED-ERICK D. HODGMAN and another, Appellants.

*Water-power — right to use — amount of water — how determined.*

Where certain real estate was granted to the defendant, "together with the right to draw water from the race or pond, sufficient for propelling four 300-pound engines, with all the machinery necessary for making paper from the same," etc., *held*, that the rights of the parties were fixed when the conveyance was delivered; that the defendants were entitled to a certain amount of water at that time, and it matters not what improvements or changes may have been made to lessen the quantity of water necessary for the purposes named; that they were still entitled, as against the plaintiffs, to the same quantity; and that the measurement should be not the powers essential to run the defendants' mill as it then was, but sufficient for the purpose as applied to the old mill and wheels as they actually existed at the time of the grant.

This action was brought to restrain the defendants from drawing and using more water than was sufficient for certain engines and machinery in the defendants' mill, and from applying the same otherwise than in the most skillful, economical manner, etc. The case was tried at a Special Term of the Supreme Court, held in the county of Saratoga, in January, 1873, before one of the justices of this court.

It appeared that prior to the year 1853, the Fort Edward Manufacturing Company owned a dam across the Hudson river at Fort Edward, and the lands adjacent to, and on the east side of, said river below said dam. The company constructed a hydraulic canal

below said dam, on the land, and erected a paper-mill, which, on the 3d day of May, 1853, they conveyed to the Fort Edward Paper-mill Company, with the right to draw water, as stated in the opinion. This conveyance excepted what was "sold for a grist-mill, cotton or woolen machinery, that may hereafter be erected, and the present iron and machine company, which said paper-mill, grist-mill, iron and machinery company, and cotton and woolen machinery, have equal privileges of drawing water from said race or dam."

The defendants succeeded to the ownership of said paper-mill privilege, conveyed in 1853; and, when the grant was made, there were two water-wheels in said paper-mill, known as the American, or center-discharge water-wheel. Prior to the year 1867, the wheel-pit in the paper-mill was sunk, and the water-wheels therein were lowered about three feet, and by means of lowering the wheels, as stated, the head and fall upon said wheels were increased. The center discharge-wheels were taken out, and three other water-wheels substituted in their places, and the machinery changed, so as to make paper from straw instead of rags, as was done at the time of said grant, in 1853. Said manufacturing company also sold and conveyed to the Fort Edward Blast Furnace Company, on the 26th day of March, 1859, a certain other piece of land, together with the right to draw water from the pond and race, "sufficient to make 200 horse-power, and the right to the preference of using said water over all the mills and machinery now on the dam or race, or that may hereafter be erected on the dam or race, excepting the grist-mill, the iron and machine company and the paper-mill, and to stand equal with them;" which last mentioned lot of land and water-privilege were transferred to plaintiffs before the commencement of this action.

In the summer-time, in dry seasons, the supply of water was inadequate for all the mills dependent upon said race, or canal, and dam. In addition to said grist-mill, iron and machine company, paper-mill and blast furnace, there were a saw-mill and a pottery manufactory, also drawing water from said canal and dam.

The questions at issue and litigated were the construction of the grant to the paper-mill company in 1853, and also, whether the defendants used or wasted more water, in fact, than authorized by

such grant, and if so, whether any to which plaintiffs were entitled. The judge decided in favor of the plaintiffs, and a decree was made defining the rights of defendants to use water under said grant, and also decreeing a perpetual injunction against defendants' using any more than allowed by the decree; and also allowing plaintiffs $1,000, extra allowance, besides the taxable costs.

Various exceptions were taken to his findings, which are sufficiently stated in the opinion. A judgment was entered, and the defendants appealed from the judgment and order.

*S. Brown*, for the appellants.

*A. D. Wait* and *E. Cowen*, for the respondents.

MILLER, P. J.:

The judge, before whom this action was tried, found, among other things, that in certain seasons of the year, for the past three years, the flow of the water was not sufficient, after supplying other mills, to drive the necessary machinery of the plaintiffs with 200 horse-power; and this, because of the excessive use of water by defendants at their paper-mill. The defendants excepted to the finding; and I am of the opinion that the exception was well taken. As I understand the testimony, there is no evidence to sustain the finding, as to there not being at all times 200 horse-power for plaintiff's use. All the evidence upon this subject was given by the witness, John F. Harris, who was sworn for the plaintiffs upon the trial. He testified that he had been connected with the blast furnace over fifteen years; that there was not an adequate supply of water at all times, and a lack of water in the summer-time, sometimes as late as the first of November, and twice at different winters; but he does not state that there was not enough to furnish the plaintiffs with 200 horse-power, as found by the judge; nor does it appear but that the furnace may have required a far greater power to operate it. If the plaintiffs had the 200 horse-power, then they enjoyed all that they were entitled to; their rights were not infringed upon, and no injury was sustained by them, which entitled them to maintain and recover in this action. The question as to the quantity of water the defendants used, was of no sort of importance, so long as plaintiffs had their full share;

and they were bound to make out affirmatively, as one of the issues in the case, that they did not have their full quota. It was not assumed on the trial that they did not have such share, and the case was not tried upon any such theory. Nor was it essential that the defendants should raise the question distinctly before the judge upon the motion for a nonsuit, or to dismiss the complaint. It was one of the issues to be determined, and it could properly be regarded on the presentation of the whole case to the court, that there was a failure of evidence in this respect which would not warrant the finding stated. As the finding is without evidence to support it, or tending at all in that direction, it is plain that the judge erred; and, as the action cannot be upheld without evidence to sustain such a finding, the absence of such evidence is fatal to the judgment.

The judge, upon the trial, also further held, that the grant of 1853, being of a power sufficient for a purpose named, was without any mode of ascertaining the quantity being provided, or the head under which the water should be used, or the size or kind of wheels on which the water should be applied; that 3,098 cubic feet of water per minute, discharged under sixteen feet head, through the wheels in the paper-mill, would produce sixty-five net powers. That the defendants were obtaining more than they were entitled to under the grant, and for every foot of fall in the water of the pond, below a level with the top of the dam, there should be an increase of quantity. The effect of these findings was to decide that the sixty-five net powers was the amount which the grant called for. It was also found that between 1853 and 1867, the wheel-pit was sunk at the defendant's mill, and the water-wheels therein lowered some three feet, and the tail-race enlarged. It appears to be quite evident that the lowering of the wheel-pit and of the wheels must necessarily have increased the power when the same quantity of water was applied, and it follows that the defendants would be entitled to the benefit of that increased power. Without considering what that increase would amount to, sufficient appears to show that the court were wrong in adopting the wheels, in use at the time of the controversy, as a basis of their decision, instead of those which were in use at the time when the deed was delivered, under which the plaintiffs claim. The rule on this sub-

ject is laid down to be, that when a grant or a reservation is made of water-power, sufficient to propel certain specified machinery, the grant is of a quantity of water which is reasonably necessary to carry on and operate such machinery at all seasons of the year, and in the state and condition in which such machinery exists at *the time of the grant.* \*

The grant to the Fort Edward Paper-mill Company, in 1853, under which the defendants claim and hold their mill privileges, conveyed to them the paper-mill and the lot of land upon which it stood, " together with the right to draw water from the race or pond, sufficient for propelling four 300-pound engines, with all the machinery necessary for making paper from the same, and the right to the preference for using water over all the mills and machinery now on the dam or race, or that may hereafter be put on, except," etc. I think that when this conveyance was delivered, the rights of the parties were fixed, and could not be affected or impaired afterward by the use of improved wheels, or by a change in the head or fall which operated them. The defendants were entitled to a certain amount of water at that time, and it matters not what improvements or changes may have been made to lessen the quantity of water necessary for the purposes named; they were still entitled, as against the plaintiffs, to the same quantity; and the measurement should be not the powers essential to run the defendant's mill as it then was, but sufficient for the purpose as applied to the old mill, and wheels as they actually existed at the time of the grant. Such would have been the true construction of the grant had the question arisen soon after it was made, while the old wheels and machinery were in operation; and there is no reason why the same rule should not apply because different wheels and a different fall of head had been adopted. It was entirely immaterial what changes had been made, so long as the right existed in the defendants, or what use they made of it, or whether they used it at all; and it is quite evident the judge was in error in the particulars named.

There are other important questions in the case; but, as for the errors stated, a new trial must be granted, their examination is not required.

\* Pratt v. Lamson, 2 Allen, 275, 283; Loverin v. Walker, 44 N. H., 489.

For the errors already noticed, the judgment and the order for extra allowance must be reversed, and a new trial granted, with costs to abide the event.

Boardman and Bookes, JJ., concurred in the result.

Judgment and order reversed, and a new trial granted; costs to abide the event.